# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **PAULA STATEN** | * | **CIVIL ACTION NO. 11-1550** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Paula Staten, born June 29, 1965, filed applications for a period of disability, disability insurance benefits,  and supplemental security income on May 13, 2009, alleging disability as of January 1, 2009, due to hypertension, diabetes mellitus, diabetic neuropathy, status-post thyroidectomy, and obesity.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following

**(1) Records from Our Lady of Lourdes Regional Medical Center dated May 4, 2009**.  Claimant presented with an abscess in the left inguinal.  (Tr. 238). Her glucose level was 438.  (Tr. 241).  The abscess was incised and drained.  (Tr. 239).

**(2) Records from LSU University Medical Center ("UMC") dated March 31, 2009 to May 21, 2009**.  Claimant was seen for uncontrolled diabetes mellitus Type 2 and hypertension.  (Tr. 246, 250).  Her glucose level on April 14, 2009, was 342.  (Tr. 247).  On May 11, 2009, she was prescribed insulin, 30 units twice a day.  (Tr. 246).  She was also instructed to follow a low-fat diet and increase physical activity.

On May 21, 2009, claimant reported that her thyroid was bothering her.  (Tr. 245).

**(3) Report from Dr. Michelle Menard dated August 15, 2009**.  Claimant complained of diabetes, high blood pressure, high cholesterol, and thyroid.  (Tr. 252).  Her diabetes was poorly controlled.  She complained of pain in her hands and feet; numbness in her toes, bottoms of feet, and fingers; cramps in her calves

2

when walking, severe dry mouth, and blurry vision.  Her medications included insulin, Metoprolol, Metformin, HCTZ, Enalapril, Aspirin, Simvastatin, Calcium, Synthroid, Lortab, and Zofran.  She had thyroid surgery on August 10, 2009.

On examination, claimant's blood pressure was 140/89.  (Tr. 253).  She was 5 feet 4 inches tall, and weighed 206 pounds.  Her gait/station was normal.  She had no edema of the extremities.

Claimant's skin had no abnormal pigmentation, rash, or other lesions.  She did not appear depressed or anxious.  Visual acuity was 20/50 in both eyes without correction.

Dr. Menard's diagnoses were diabetes mellitus, Type II, diabetic peripheral neuropathy, hypertension, hyperlipidemia, and thyroid nodules status-post thyroidectomy.  She noted that claimant had poorly controlled diabetes and had now developed clinical signs and symptoms of diabetic peripheral neuropathy. Her gait, strength, range of motion, and reflex testing were normal.  Her blood pressure was just above normal limits that day for a diabetic.

Based on the examination and the objective evidence, Dr. Menard opined that claimant should be able to sit, walk, and/or stand for a full workday with occasional breaks.  She said that claimant could lift/carry objects up to 20 pounds, hold a conversation, respond appropriately to questions, carry out and remember

3

instructions.

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated
September 2, 2009**.  The non-medical examiner determined that claimant could
lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit
about six hours in an eight-hour workday, and had no push/pull limitations.  (Tr.
257).  She had occasional postural limitations, and no other restrictions.  (Tr. 258-
60).

**(5) Records from UMC dated July 16, 2009 to May 4, 2010**.  On July 16,
2009, claimant was seen for neck fullness with thyroid mass.  (Tr. 274).  She
underwent a total thyroidectomy for multiple thyroid nodules on August 10, 2009.
(Tr. 272-73).  She was started on Synthroid.  (Tr. 268).

On September 14, 2009, claimant complained of pain in the feet and legs,
rating her pain as 10 out of 10.  (Tr. 267).  Her diagnoses were uncontrolled
diabetes, hypertension, and dyslipidemia; hypothyroidism due to thyroidectomy,
and peripheral neuropathy.  Her insulin dose was 35 units twice per day.

On October 22, 2009, claimant reported that her pain was 0/10.  (Tr. 266).
She complained of pressure in her neck, lethargy, and fatigue.

On December 15, 2009, claimant reported no pain.  (Tr. 294).  She
complained of lack of hand strength, intermittent numbness and tingling in her

4

hands and feet, and balance problems.

Dr. Shahed Jameel completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on January 29, 2010.  (Tr. 299-301).  He wrote that claimant could sit for 30 minutes and stand/walk for 15 minutes at one time without interruption.  (Tr. 299).  He checked that she could sit for four total hours, and stand/walk for two total hours, in an eight-hour workday.  He noted that claimant's ability to sit, stand, and walk was limited by her diabetes with diabetic neuropathy of her bilateral extremities, obesity, and hypertension.

Dr. Jameel checked that claimant could handle with her hands frequently, and reach, finger, feel, and push/pull continuously.  (Tr. 300).  He also checked that her glucose level fluctuated several times a day in spite of following prescribed treatment.  (Tr. 301).  He checked that these fluctuations caused dizziness, fatigue, blurry vision, and restlessness, and that it took 30 to 45 minutes before these symptoms were relieved.

Additionally, Dr. Jameel checked that claimant's medications caused side effects of drowsiness and sedation.  He wrote that her medical problems affected her ability to work consistently eight hours a day, five days a week.  (Tr. 301).

A notation on claimant's thyroid lab results taken on January 13, 2010, stated that "need to discuss with patient.  Unlikely that she is taking her meds."

5

(Tr.  307).  A notation dated January 14, 2010, stated that the patient was instructed to take her Sythnroid in the morning and that the patient had verbalized her understanding.

On March 16, 2010, claimant's fructosamine level was 586.  (Tr. 306).

On March 22, 2010, claimant's blood pressure was 154/83.  (Tr. 303).  It was noted that claimant had not taken her medications since the day before because she had left them in Texas.  She complained of leg discomfort and burning in her feet.  The assessment was uncontrolled diabetes and hypertension, dyslipidemia, hypothyroidism, peripheral neuropathy, proteinuria, and intermittent claudication.  Her insulin was increased to 45 units twice a day.

On June 22, 2010, claimant's Neurontin was increased to three times per day, and she was prescribed Lortab 10 (increased from 7.5 on December 15, 2009), Ultram for pain, Paxil for depression, and Avapro (for high blood pressure or kidney disease in diabetic patients).  (Tr. 228, , 296, 304).  Her insulin was also increased from 45 to 50 units two times per day.  (Tr. 228, 304).

**(6) Claimant's Administrative Hearing Testimony**.  At the hearing on June 29, 2010, claimant was 45 years old.  (Tr. 29).  She testified that she was 5 feet 4 inches tall, and weighed 211 pounds.  She had completed the 10th grade. (Tr. 30).

6

Claimant reported that she had past work experience washing and pressing clothes at the cleaner's.  (Tr. 31).  She stated that she had stopped working as a clothes presser because she became dizzy and could not make it to work.  (Tr. 39). She testified that she had blacked out while pressing shirts and burned herself over her forehead above her eye.  (Tr. 40).

Additionally, claimant had done some babysitting.  (Tr. 32).  She said that she had stopped because she could not lift, stand, and sit.  She testified that she did not have any problems maintaining attention while babysitting, but had fallen asleep several times because of her medications.  (Tr. 40).  She stated that she had problems with fatigue and napped three or four times a day.  (Tr. 40-41).

As to complaints, claimant confirmed that she had a history of diabetes and a thyroidectomy.  (Tr. 32).  She said that she took her medications for both every day.  She complained that she still had thyroid problems, and that her medication had just been increased.  (Tr. 33).  She also had high blood pressure and depression for which she took medication.  (Tr. 40, 42).

Additionally, claimant complained of pain in her legs, hands, feet, and fingers.  (Tr. 33).  She stated that she had not been able to control her blood sugar. (Tr. 34).  She reported that her medication helped her pain somewhat, but not the swelling.  She identified no side effects from medication.  (Tr. 43). She said that

7

she adhered to a diabetic diet.  (Tr. 35).

Claimant testified that she took 50 units of insulin twice a day.  (Tr. 38).
She reported that she got sores on her feet, chest, and arms from diabetes.   She
also stated that she had blurred vision.  (Tr. 39).

Regarding activities, claimant testified that she had stopped driving a year
prior.  (Tr. 30).  She stated that she last babysat her four grandchildren almost a
year prior.  (Tr. 36).  She said that her children would not let her watch her
grandchildren.

As to restrictions, claimant said that she sat down for most of the day
because her legs hurt and feet swelled after walking for five minutes.  (Tr. 34, 42).
She stated that she had tried to exercise, but could only walk to the mailbox and
back because of her leg problems.  (Tr. 36).  Additionally, she reported that she
had pains in her hands and fingers, which affected her strength.  (Tr. 43).

**(7) Administrative Hearing Testimony of Beverly K. Majors,**

**Vocational Expert ("VE")**.  Ms. Majors classified claimant's past work as a
presser, which was light to medium with an SVP of 3.  (Tr. 44-45).  She identified
her job as a babysitter as medium with an SVP of 3.  (Tr. 45).

The ALJ posed a hypothetical in which he asked the VE to assume a
claimant of the same age, education, and work experience; who could lift and

carry 20 pounds occasionally and 10 pounds frequently; stand and walk for about six hours, one hour continuously; sit for six hours, one hour continuously, and could not work at heights.  In response, Ms. Majors testified that claimant could not do her past work, but could work as a light receptionist, of which there were 84,223 positions nationally and 1,221 statewide, and light office helper, of which there were 113,935 jobs nationally and 1,812 statewide.  (Tr. 45-46).

When the ALJ changed the hypothetical to limit claimant to sedentary work, meaning she could lift and carry 10 pounds occasionally and five pounds frequently; sit for six hours, one hour continuously, then might have to momentarily change positions, and could not work at heights, the VE testify that she would be able to do almost any type of sedentary job, including bookkeeping clerk, of which there were 69,679 jobs nationally and 993 statewide; telemarketer, of which there were 346,384 jobs nationally and 2,520 statewide, and general office clerk, of which there were 97,182 positions nationally and 1,278 statewide. (Tr. 47-48).

The ALJ then asked the VE to assume a claimant who was unable to maintain a posture, either standing, walking, or sitting, for a total of eight hours in a day, to which she responded that no jobs would be available to such claimant.

Claimant's attorney asked whether claimant would be able to do any of the sedentary jobs if she had glucose level fluctuations several times a day causing dizziness, fatigue, and blurry vision taking approximately 30 to 45 minutes to resolve during which time she would have to lie down.  (Tr. 48-49).  In response, Ms. Majors testified that an employer would not be able to accommodate that. (Tr. 49).  Additionally, claimant's attorney asked whether any jobs would be available for a claimant who needed to sleep two to three times per day due to fatigue and medication side effects.  The VE responded that there would not.

**(8) The ALJ's findings**.  Claimant argues that: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ failed to consider all relevant medical evidence of record; (3) the ALJ failed to properly weigh the opinion of Dr. Jameel; (4) the ALJ applied an incorrect legal standard in finding claimant not disabled for non-compliance with prescribed treatment, and (5) the ALJ failed to properly consider her credibility.  Because I find that the ALJ's RFC assessment that claimant could perform the full range of sedentary work is not supported by substantial evidence, I recommend that this matter be **REMANDED** for further proceedings.

As to the first argument, claimant asserts that the ALJ's RFC determination that claimant can perform the full range of sedentary work is not supported by

substantial evidence.  The ALJ accorded great weight to Dr. Menard's opinion, and the DDS assessment, that claimant had the residual functional capacity to perform light work.[1]  (Tr. 19-20, 254, 257-60).  At that time, August 15, 2009, Dr. Menard found that claimant should be able to sit, walk, and/or sit for a full workday with occasional breaks; could lift/carry objects up to 20 pounds, hold a conversation, respond appropriately to questions, and carry out and remember instructions.  (Tr. 254).

However, five months later, on January 29, 2010, Dr. Jameel completed a Medical Source Statement.  (Tr. 299-301).  At that time, he found that claimant could sit for 30 minutes and stand/walk for 15 minutes at a time without interruption, and sit for four total hours, and stand/walk for two total hours, in an eight-hour workday.   (Tr. 299).  He noted that claimant's ability to sit, stand, and walk was limited by her diabetes with diabetic neuropathy of her bilateral extremities, obesity, and hypertension.

Additionally, Dr. Jameel noted that claimant's glucose level fluctuated several times a day in spite of following prescribed treatment.  (Tr. 301).  He checked that these fluctuations caused dizziness, fatigue, blurry vision, and

---

[1]The undersigned notes that the Residual Functional Capacity Assessment was not completed by a physician.  (Tr. 257-60).

restlessness, and that it took 30 to 45 minutes before these symptoms were relieved.  He also checked that her medications caused drowsiness and sedation. He opined that her medical problems affected her ability to work consistently eight hours a day, five days a week.  (Tr. 301).

The ALJ noted that Dr. Jameel found that claimant was able to sit for four hours in a total eight-hour workday and stand/walk for two hours "with no explanation of what the claimant could to for the remaining two hours."  (Tr. 19). He found that the DDS assessment and the assessment performed by Dr. Menard were "consistent with the other medical evidence of record."

However, the undersigned observes that Dr. Jameel's assessment was performed five months later than Dr. Menard's.  By that time, claimant's condition had worsened, and continued to deteriorate thereafter.  Although the ALJ noted that claimant's pain level in December, 2009, was "0" on a scale of 0-10, he omits the fact that in September, 2009, she rated her pain as 10 out of 10.  (Tr. 19, 267). Additionally, her insulin dose was increased from 35 units twice per day on October 22, 2009 to 50 units two times per day by June 22, 2010.  (Tr. 228, 303, 304).

Further, between December 15, 2009, and June 22, 2010, claimant's Neurontin dosage was increased from one to three times per day and her Lortab

strength was raised from 7.5 to 10 mg.  (Tr. 228, 304).  Moreover, in June, 2010,

UMC's doctors added Ultram for pain, Paxil for depression, and Avapro for high

blood pressure or kidney disease.  (Tr. 228, 304).

Dr. Jameel checked that claimant's medications caused drowsiness and

sedation.  Lortab 10 is a narcotic medication used to treat moderate to moderately

severe pain.  Ultram is also used to treat moderate to moderately severe pain.

Neurontin is used to treat nerve pain.  Among the common side effects of these

drugs, particularly Lortab, is drowsiness.

Under the regulations, the Commissioner is required to consider the "type,

dosage, effectiveness, and side effects of any medication [the claimant] take[s] or

ha[s] taken to alleviate [] pain or other symptoms."  *Crowley v. Apfel*, 197 F.3d

194, 199 (5ᵗʰ Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)).  The ALJ did not

do so in this case.  Thus, the ALJ's failure to consider the effects of claimant's

medication on her ability to work was error.

Additionally, Dr. Jameel stated that claimant's medical problems affected

her ability to work consistently eight hours a day, five days a week.  (Tr. 301).

He noted that her glucose level fluctuated several times a day in spite of following

prescribed treatment.  He checked that these fluctuations caused dizziness, fatigue,

blurry vision, and restlessness, and that it took 30 to 45 minutes before these

symptoms were relieved.  He noted that claimant's ability to sit, stand, and walk was limited by her diabetes with diabetic neuropathy of her bilateral extremities, obesity, and hypertension.

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that she can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job she finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5ᵗʰ Cir. 2002) (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)).

Further, the ability to work only a few hours a day or to work only on an unpredictable or intermittent basis does not constitute the ability to engage in "substantial gainful activity."  *Tucker v. Schweiker*, 650 F.2d 62, 64 (5ᵗʰ Cir. 1982); *Cornett v. Califano*, 590 F.2d 91, 94 (4ᵗʰ Cir. 1978); *Prestigiacomo v. Celebrezze*, 234 F.Supp. 999 (E.D. La. 1964).

Here, Dr. Jameel found that claimant had limitations on her ability to work consistently eight hours a day for five days a week.  [Tr. 301].  However, the government correctly points out that Dr. Jameel's "partially completed" checklist form does not indicate whether Dr. Jameel actually reviewed claimant's records. [rec. doc. 10, pp. 6-7].  Additionally, the government notes that Dr. Jameel failed

to complete part of the form, namely in response to the question, "If the total time for sitting, standing, and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 9 hours?"  (Tr. 299).

Had Dr. Jameel completed the report consistently with the findings which he did make, the Court would have no hesitation in recommending that benefits be awarded.  However, because of the incompleteness of Dr. Jameel's report, it is my recommendation that the Commissioner's decision be **REMANDED** to the Commissioner for further administrative action pursuant to the sixth sentence of 42 U.S.C. § 405(g).  This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain an updated residual functional capacity assessment.  Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).  See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days

15

from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's

objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to

the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL**

**CONCLUSIONS REFLECTED IN THIS REPORT AND**

**RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING**

**THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME**

**AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED***

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed October 9, 2012, at Lafayette, Louisiana.

*C. Michael Hill*
_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

16

Copy sent: TLM
On: 10-09-2012
By: MBD